Good morning, Your Honors. Ina Lipkin on behalf of the Law Office of Jorge Rodriguez-Choi for the Petitioner. Here the Petitioner asks the Court to find that both the Judge and the Board of Immigration Appeals erred in not finding that the IJ committed abuse of discretion in denying the Petitioner's request for a continuance to present witnesses. The IJ's actions were tantamount to denying the Petitioner her due process rights. Through her counsel, she had requested in advance, not just on the day of the hearing, but in writing prior to the hearing, for a short continuance to allow a key witness, the psychologist Dr. Arone, to testify on her behalf regarding the mental abuse she suffered by her United States citizen husband. What's the prejudice, even assuming that was error, given for Arone's statement that she said everything she had to say in the report? Well, it is very common for a doctor or medical expert or any expert in immigration proceedings or otherwise, for that matter, to submit a written statement of their conclusions. And it is customary that when that individual is available to testify, then counsel for both attorneys as well as the judge can flesh out the details of the expertise of whatever consultations they had with the client, in this case the Petitioner. Seeing the witness on the stand and asking additional questions that might not have been included in the report would have helped the Petitioner establish that she, in fact, was a victim. Well, I hear the words, but what is there to show that she didn't mean what she said? That is, she had nothing else to say. And what is there to show that she would have said anything more helpful or different from what was in her report, contrary to what she herself said? Well, the witness is not a legal expert and not a lawyer. She wrote down in medical terms her findings, and it was for the benefit of the Petitioner and Petitioner's counsel to ask additional questions to establish maybe those areas where the psychologist did not explain in full detail the source of the Petitioner's feelings of depression or abuse or to show more with more detail how her United States citizen husband had caused the depression that she was currently suffering. Well, taking all of that as true, don't we circle back to the question about the bona fide marriage? And this witness wouldn't have been able to testify on that point, would she? That's correct. No, she would not have. She would only go on the Petitioner's word. Now, regarding the judge's findings about the bona fides of the marriage, she relied on speculation and conjecture to find that the two sworn statements by the United States citizen spouse conclusively established it was a fraudulent marriage. Remember, he first signed, sworn under penalty of perjury, a statement attesting to the bona fides of the marriage. In the record, we find another statement in which he then denounces his previous statements, also sworn under penalty of perjury. As he was not a witness in the proceedings, the judge could not place the same weight on these two documents as she would in normal proceedings. It was unreasonable for the judge to find that it was implausible that the Mr. Willis, or I'll just call him Mr. Willis, would threaten the Petitioner of deporting her and at the same time admit to perjury. However, she failed to take into account he was a drug user, one who did not see counseling, which led ultimately to the failure of the marriage and the abuse that the Petitioner suffered. How much weight can his sworn statement that it was a false marriage be attributed? Secondly, we don't know how reasonable he might be if he is under the influence of drugs. Therefore, the I.J.'s speculation as to his motivation was improper. Well, the I.J. had some difficulty with Ms. Favara's credibility in that, you know, she didn't have any sort of documentary or the documentary proof that she presented was really not supportive. A joint bank account existed after she said they split. A number of other facts that called into question her view that it was, in fact, a valid, if abusive, relationship. Your Honor, that very point, that very example of the joint bank account actually disproves the I.J.'s theory. Namely, if it really was a fraudulent marriage, wouldn't Mr. Willis, after signing a sworn declaration under penalty of perjury, sever all ties with the Petitioner? Obviously, they did not because they had a real marriage. They had a joint bank account for an additional two years after the interview for the marriage occurred. That only goes to show they did. I'm sorry? It doesn't necessarily follow they did. She did. But she showed their names on joint documentation well after 1999, which only proves that it is more likely it was a bona fide marriage rather than a fraudulent one. Okay. What is our standard for finding that the credibility decision of the I.J. is wrong? If substantial evidence does not support her findings. And substantial evidence did not. Her findings were based on conjecture and speculation. Don't we have to find that it's clearly wrong? That's right. Clearly erroneous. And the other thing is that all of the testimony with regard to an abusive spouse would have no merit if the marriage was not valid. That is true, Your Honor. However, the testimony did not clearly show that. Substantial evidence did not show that. Thank you. Good morning. May it please the Court. I'm Paul Fiorina for the Respondent. I wanted to start off with a comment that Judge Hugg made when my opposing counsel said that the standard of review is clearly erroneous and that's not correct. In order for the Court to reverse the adverse credibility finding, we would have to find that the evidence compels a conclusion, no other conclusion but that the petitioner is credible. Under Elias Zacharias, correct? Correct, Your Honor. And is codified by Congress in 242. Judge Reimer, you asked about what prejudice there is for not having Dr. Arone testify. And there clearly is none. Dr. Arone's affidavit appears in the record. And there's nothing that she could have really added to her testimony would have added to help petitioner meet her burden, which is to make a credible claim that she qualifies for cancellation of removal. And there's really nothing that she could have said and the petitioner points to nothing that she could have testified to had she testified live that would have helped petitioner meet that burden. Again, this case is about whether the petitioner presented a credible claim. And there are numerous instances in the record that support the inference that the petitioner was not credible. First of all, with respect to her arrest record, you can see, look, on pages 103 to about 111, she's very evasive about her arrest record. And this is relevant because it has to do with potentially her good moral character. And you can see that she's very evasive and doesn't answer questions directly and completely forgets that she was arrested once. That is a severe lack of credibility, which supports the immigration judge's finding that her entire claim lacked credibility. Lacking any other questions to the Court, that concludes our presentation. I don't think so. Thank you. Oh, one more thing I forgot. I'm sorry. I was handed 10 minutes ago a citation of supplemental authorities, and I haven't had a chance to review them. And if the Court decides that any of them are relevant, we would ask the opportunity to present a legal letter brief. Thank you. Well, can you have anything further? Your Honors, counsel for the government is requesting that the Court review the underlying cancellation of removal claim and its merits. However, that's not the issue before the Court.  But very quickly, turning to the merits such as good moral character, the judge clearly found that the Respondent testified consistently, both in court and with her written declaration. And her arrest record consisting of stealing a pack of gum at Costco is not something that any court would find was detrimental to good moral character. Thank you. Okay. What do we do with the specific finding of the IJA? He says, in short, the Court finds the Respondent has not testified credibly in these proceedings, and the claim for a bona fide marriage to Daryl has been rebutted by the government evidence. Does the Court believe, given this finding, it's not necessary for the Court to brief the issue of whether emotional abuse is involved? This is where the IJA clearly erred, because none of the Respondent's, excuse me, none of the Petitioner's testimony was inconsistent. The only inconsistency was that one sworn statement by Mr. Willis saying that the marriage was fraudulent. Does it compel an additional finding like Elias Zacharias requires? An additional finding of what, Your Honor? That it was, that she was not credible? Well, she based the incredibility finding solely on the documentary evidence that the government presented that it was a fraudulent marriage. Nothing in her own testimony was incredible. Nothing between her testimony and her own documentary proofs was inconsistent or contradictory. So, again, based on the judge's speculation that the underlining marriage was not bona fide, on that basis, she found the Respondent's, the Petitioner's testimony incredible, which was improper. Thank you, counsel. The matter just argued will be submitted.
judges: Hug, Rymer, McKeown